IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:06CR124 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM AND ORDER |
| | ) | |
| ERIC J. MILLER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on defendant's "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" ("§ 2255 motion"), Filing No. 67.[1]  In his motion, Miller asserts ineffective assistance of counsel at sentencing. Miller asserts that counsel was ineffective at sentencing in failing to challenge his qualification as a career offender and also contends that the  government breached the plea agreement.  He contends that the plea agreement provided for a sentence of 100 to 125 months.

**I.  FACTS**

Eric J. Miller was originally indicted for being a felon in possession of a firearm under 18 U.S.C. § 922(g).  The government later filed an information charging him with possession with intent to distribute more than 5 grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1).  Filing No. 20.  The statutory range of imprisonment for that charge is

---

[1]Miller also moves for an evidentiary hearing.  A § 2255 movant is entitled to an evidentiary hearing unless "the motion and the files and records of the case conclusively show that [he] is entitled to no relief." 28 U.S.C. § 2255.  "No hearing is required where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007) (internal quotations omitted).  Accordingly, the court must consider the validity of the movant's claims for relief in denying an evidentiary hearing.  *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir.2008).  In light of the court's disposition, no hearing is necessary.

five to forty years.  21 U.S.C. § 841(b)(1)(A)(ii).  He entered a plea of guilty to that charge pursuant to a plea agreement.  Filing No. 23, Plea Agreement.  In the plea agreement, he acknowledged that he was subject to a mandatory minimum sentence of five years and agreed to a quantity of 17.1 grams of crack cocaine and 248.9 grams of powder cocaine. *Id.* at 1.  The government agreed to dismiss the felon-in-possession indictment and to recommend a sentence at the low end of the applicable sentencing Guidelines range.  *Id.* at 1-2. It also agreed not to file any other drug or firearms charges against Miller in connection with his conduct on April 20, 2006.  *Id.* at 2.  The plea agreement was not an 11(c)(1)(C) agreement that would bind the court to a certain sentence if accepted.  *See id.* Other than establishing the quantity, the plea agreement did not refer to the length of Miller's sentence and the parties agreed that there were "no other terms or conditions to this plea agreement except for those set forth in writing."  *Id.* at 3.

At the change of plea hearing, the following colloquy ensued:

THE COURT:  Did you talk to your lawyer about the sentencing guidelines and how they could apply in your case?
THE DEFENDANT: Yes, Your Honor.
THE COURT:  Do you recall what the guideline range is for you? In other words, the sentencing range and how you fell on the guidelines chart?
THE DEFENDANT: Yes.
THE COURT:  What was that?  Do you recall?
[DEFENSE COUNSEL]:  There is the possibility of career offender, Your Honor, so without that it's 100 to 125.  With that it's 188 to 235.
THE COURT:  So what your lawyer has told me here, Mr. Miller, is that you basically have an imprisonment range of between 100 months and 235 months, which is a big range, and that depends on whether you are a career offender.  Do you remember talking to her about this?
THE DEFENDANT: Yes.
THE COURT:  Do you think you have a realistic understanding about how much jail time you are facing by pleading guilty to this charge?
THE DEFENDANT: Yes, Your Honor.
THE COURT:  Has Ms. Shanahan answered all the questions you have about the sentencing issues?

2

THE DEFENDANT:  Yes.
THE COURT:  Do you understand that there is no parole under the federal sentencing law?
THE DEFENDANT:  Yes, Your Honor.
THE COURT:  Do you understand that while you're on supervised release, if you violate the terms of the supervised release, you could be sent back to prison?
THE DEFENDANT:  Yes.
THE COURT:  Do you think you understand the penalties that you could receive under the law?
THE DEFENDANT:  Yes.

Filing No. 41, Guilty Plea Transcript at 9-10.  The court accepted the defendant's plea but deferred approval of the plea agreement pending the preparation of a Presentence Investigation Report ("PSR") by the United States Office of Probation.  Filing No. 24, Minute Entry.

In the PSR, the Probation Office found that Miller should be responsible for an additional 2 grams of crack cocaine found on another person at the time of his arrest, and determined his base offense level under U.S.S.G. § 2D1.1(a)(3)(c)(6) was 28 (based on possession with intent to distribute a quantity of between 400 and 700 kilograms of marijuana equivalent).  Filing No. 39, PSR (Sealed) at 5-6.  It also found a two-level enhancement was applicable for use of a firearm under U.S.S.G. § 2D1.1(b)(1), resulting in a base offense level of 30.  *Id.* at 6.  It found Miller was a career offender under U.S.S.G. § 4B1.1(a) based on convictions for burglary and flight to avoid arrest, resulting in an enhancement to offense level 34.  *Id.* at 6-7.  After deduction of three levels for acceptance of responsibility, Miller's recommended total offense level was 31.  *Id.* at 7.  Miller was assessed 13 criminal history points for convictions for crimes such as possession of drugs and paraphernalia, felony burglary of a residence, unlawfully stealing firearms (after driving a stolen van through the wall of a pawn shop), first-degree assault, flight to avoid arrest,

3

and violations of supervised release, resulting in a criminal history category of VI.[2]  *Id.* at

9-12.  Miller's Guidelines range, at offense level 31 and criminal history category VI, was

188 to 235 months.  *Id.* at 17.

The government adopted the findings in the PSR.  Filing No. 26.  The defendant

moved for a downward departure from the Guidelines for overstatement of criminal history.

Filing No. 28.  At the sentencing hearing, Miller's counsel also challenged the quantity

determination in the PSR, objected to the PSR's recommended enhancement for use of

a firearm, and moved for a downward departure, arguing that the court should not

sentence Miller as a career offender under the Guidelines.  Filing No. 41, Sentencing

Transcript ("Sent. Tr.") at 23-26.  Miller's counsel asked the court to consider the fact that

one of Miller's convictions was for the burglary of a nonresidential property that had been

committed more than ten years earlier.  *Id.* at 33-34.

The court sustained the defendant's objection to the PSR's determination of quantity

and to the firearm enhancement.  *Id.* at 25-26.  The court then accepted the PSR, as

amended, and found that Miller's base offense level based on quantity would be 26, but

that the application of career-offender provisions resulted in base offense level 34.  *Id.* at

32.  After deduction of three levels for acceptance of responsibility, the court found Miller's

base offense level was 31 and his criminal history category was VI, resulting in a

sentencing range of imprisonment of 188 to 235 months.  *Id.* at 32.  The court denied

Miller's motion for a downward departure, stating:

---

[2]Because Miller qualified as a career offender, he would have been placed in criminal history category
VI regardless of criminal history points.  *See*  U.S.S.G. § 4B1.1(b).

4

> With respect to the motion for downward departure, I note that Mr. Miller had the burglary charge in paragraph 41 at age 18.
>
> And apparently while he was out on release he committed what amounts to the burglary of Sol's Jewelry & Loan to steal the firearms for which he was prosecuted at age 19.
>
> And then he was sentenced for the state violation shortly after his arrest on the federal violation.
>
> And then after he was in state custody for a while, probably after he was released from state custody, he was sentenced on the federal charge to 37 months.
>
> So he basically committed two burglaries.  I understand that it was when he was age 18 and age 19, but I believe Mr. Norris is right.
>
> He is a career offender by any definition, and he was put in prison for 13 to 36 months when he was 18 for the burglary, and 37 months in '94 when he was 19.
>
> And then after he gets out of jail, then he drags a police officer and gets some more time for the flight to avoid arrest.
>
> And then since then he's endeared himself by continuing to deal narcotics and pimp.
>
> So I don't know how I can justify giving him a downward departure.
>
> So I'm going to overrule the motion for downward departure.

*Id.* at 44-45.  Miller was sentenced to 188 months' imprisonment.  *Id.* at 47.  Miller was

sentenced after the Supreme court decided *United States v. Booker*, 543 U.S. 220 (2005),

and the Guidelines were treated as advisory.  *See id.* at 35-36.

Miller appealed his sentence to the Eighth Circuit Court of Appeals ("Eighth Circuit"),

arguing that a sentence of 188 months was unreasonable under *Booker.*  His sentence

was affirmed.  Filing No. 44.  Miller later filed a motion for under 18 U.S.C. § 3582(c) to

reduce his sentence under the crack cocaine amendments to the Guidelines.  *See* Filing

No. 54, Motion.  The motion was denied and the denial was affirmed by the Eighth Circuit.

*See* Filing No. 58, Minute Entry; Filing No. 85, Eighth Circuit opinion.  At a hearing on the

18 U.S.C. § 3582 motion, this court noted that it had looked at Miller's prior criminal history

and computed his lower guidelines calculation, but, "unfortunately for Mr. Miller I decided

to give him the career offender sentence.  I think I had it within my jurisdiction to give him

something less than 188 months and I decided not to because of the nature of the criminal offenses that he had the day I sentenced him."  Filing No. 84, Hearing Tr. at 8.

## II.  DISCUSSION

### a.  Law

Under 28 U.S.C. § 2255, a federal prisoner has "an avenue for relief if his 'sentence was imposed in violation of the Constitution or laws of the United States, or . . . was in excess of the maximum authorized by law.'"  *King v. United States*, 595 F.3d 844, 852 (8th Cir. 2010) (quoting 28 U.S.C.A. § 2255(a)).  Ineffective assistance of counsel issues are appropriately raised in collateral proceedings.  *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003).  The right to counsel is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process.  *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986).

The right to counsel includes the right to reasonably effective counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  In order to make out a claim of ineffective assistance, a petitioner must satisfy the familiar *Strickland* standard, "which requires a showing 'that his lawyer's performance fell below the minimum standards of professional competence (deficient performance) and that there is a reasonable probability that the result of the proceedings would have been different if his lawyer had performed competently (prejudice).'"  *King v. United States*, 595 F.3d at 852 (quoting *Alaniz v. United States*, 351 F.3d 365, 367-68 (8th Cir.2003)).

Deficient performance "is that which falls below the 'range of competence demanded of attorneys in criminal cases.'"  *Sinisterra v. United States*, — F.3d —, —, 2010

6

WL 1236310, *5 (8th Cir. April 1, 2010) (quoting *Strickland*, 466 U.S. at 687). There is a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance and sound trial strategy. *Toledo v. United States*, 581 f.3d 678, 680 (8th Cir. 2009). "The standard is an objective one, viewed in light of professional norms prevailing when the representation took place." *Sinisterra*, 2010 WL 1236310 at *5; *Bobby v. Van Hook*, 130 S. Ct. 13, 16 (Nov. 9, 2009) (per curiam). The court must consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. The reasonableness of counsel's challenged conduct must be judged on the facts of the particular case, viewed as of the time of counsel's conduct. *King*, 595 F.3d at 852. Counsel's performance is not to be evaluated "using 'the clarity of hindsight, but in light of the facts and circumstances at the time of trial.'" *Toledo v. United States*, 581 F.3d 678, 681 (8th Cir. 2009) (quoting *Carter v. Hopkins*, 92 F.3d 666, 669 (8th Cir.1996). Failure to anticipate a change in existing law does not rise to the level of constitutional ineffectiveness. *Id.*

To establish prejudice under *Strickland,* a petitioner must "demonstrate that there is a reasonable probability that, but for counsel's claimed unprofessional errors, the result of the proceeding would have been different." *Christenson v. Ault*, 598 F.3d 990, 996 (8th Cir. 2010). In the sentencing context, prejudice can be found with a showing that, had an argument been presented, a defendant likely would have received a much shorter sentence. *King,* 595 F.3d at 852-53. "An error increasing a defendant's sentence by as little as six months can be prejudicial within the meaning of *Strickland*." *Alaniz*, 351 F.3d at 368; *see also United States v. Spigner,* 416 F.3d 708, 711 (8th Cir. 2005)*; King,* 595 F.3d at 853-54.

The Guidelines provide that a defendant who is over eighteen and convicted of a contolled substance offense must be sentenced as a career offender if "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a).  Several recent Supreme Court decisions have affected the interpretation of the term "crime of violence."  *See, e.g., Johnson v. United States*, 130 S. Ct. 1265, 1271 (March 2, 2010) (holding that the phrase "physical force" in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924, means violent force—that is, force capable of causing physical pain or injury to another person"); *Chambers v. United States*, 129 S. Ct. 687, 690 (2009) (holding that the felony of failing to report for penal confinement is not a violent felony for purposes of § 924(e)(2)(B)(ii) because it is "less likely to involve a risk of physical harm than the less passive, more aggressive behavior underlying an escape from custody."); *Begay v. United States*, 553 U.S. 137, 142 (2008) (limiting the scope of the ACCA's residual clause to crimes similar to enumerated offenses that involve purposeful, violent and aggressive conduct, and not to "*every* crime that 'presents a serious potential risk of physical injury to another'") (emphasis in original); and *James v. United States*, 550 U.S. 192, 207-08 (2007) (attempted burglary is a violent felony even if committed without risk of injury).

Given their nearly identical definitions, the statutory term "violent felony" in the ACCA and the Guidelines term "crime of violence" are regarded as interchangeable. *United States v. Hennecke*, 590 F.3d 619, 621 n.2 (8th Cir. 2010).  A "crime of violence" is an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another" or involves certain enumerated offenses "or otherwise involves conduct that presents a serious potential risk of physical injury to another."

8

U.S.S.G. § 4B1.1(a)(1)&(2).  Under both the statutory and the Guidelines provisions that relate to career offenders, a conviction counts as a conviction for a crime of violence if "physical force against the person of another" is an element of the offense.  18 U.S.C. § 924(e)(2)(B)(i); U.S.S.G. § 4B 1.2 (a)(1); *see generally Johnson,* 130 S. Ct. at 1271.  A conviction for an offense enumerated in the statute or the Guidelines also counts under the definitions of "violent felony" or "crime of violence."  *See* 18 U.S.C. § 924(e)(2)(B)(ii)(listing burglary, arson, extortion, or involves use of explosives); U.S.S.G. § 4B1.2(a)(2)(listing burglary of a dwelling, arson, extortion, or involves the use of explosives) (emphasis added); *see generally Taylor v. United States,* 495 U.S. 575, 597 (1990) (holding that "burglary," within the meaning of the ACCA, is not limited to burglaries that include conduct that presents serious risk of physical injury to another, over and above risk inherent in an ordinary burglary).

Further, a conviction can also count under the so-called residual clause, otherwise involving "conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2); 18 U.S.C. § 924(e)(2)(B)(ii)*; see generally Begay v. United States,* 553 U.S. at 142.  Under the residual clause, once the crime of conviction is identified, it is classified as either violent or nonviolent based on "the crime as generally committed," not whether "the present defendant's prior crime, as committed on a particular occasion, did or did not involve violent behavior." *Chambers v. United States,* 129 S. Ct. at 690; *see also Begay,* 128 S. Ct. at 1588 (mandating use of a "categorical approach" to determine whether a crime is a violent felony under the ACCA's residual clause and holding that drunk driving is not a violent felony).

9

In the Eighth Circuit, "any generic burglary is a crime of violence under the 'otherwise involves' residual provision in U.S.S.G. § 4B1.2(a)(2)." *United States v. Stymiest*, 581 F.3d 759, 769 (8th Cir. 2009) (holding that *Begay* did not undermine the Eighth Circuit's previous decisions holding that generic burglary—including burglary of a commercial building—is a crime of violence under the Guidelines). Likewise, "knowingly fleeing a police officer who is attempting to make an arrest is purposeful conduct that falls within the 'otherwise involves' clause of § 4B1.2(a)(2) as construed in *Begay*." *United States v. Hudson*, 577 F.3d 883, 886 (8th Cir. 2009) (stating that "[r]esisting arrest by fleeing in a dangerous manner also involves violent and aggressive conduct").

### b. Analysis

The court finds Miller's claim of ineffective assistance of counsel is without merit. The record shows that counsel clearly informed the defendant of the possibility, if not the probability, that he would be sentenced as a career offender. The record also shows that the prosecutor did not advocate any position contrary to the plea agreement at sentencing. Contrary to the petitioner's assertion, the record shows that Miller did not waive his right to appeal in the plea agreement, and that he, in fact, appealed his sentence. Miller has not shown that his counsel's conduct fell below an objective level of competence.

To the extent that Miller's petition can be construed as raising a *Begay* challenge to his career-offender status, the court finds no deficient performance in Miller's counsel's representation with respect to the "crimes of violence" issues. Counsel's motion for a downward departure based on overstatement of criminal history tangentially involved the "crimes of violence" issue and the commercial/residential burglary distinction was addressed at the sentencing hearing.

10

Miller was sentenced on January 22, 2007.  Miller's direct appeal was decided on November 30, 2007, and became final ninety days thereafter.  The Supreme Court did not grant certiorari in *Begay* until September 25, 2007, and its decision was issued on April 16, 2008.  Sentencing counsel's performance cannot be considered constitutionally deficient for failure to anticipate future changes in the law.

Moreover, Miller has not shown prejudice.  In this circuit, even post-*Begay*, Miller's prior convictions for burglary of a commercial building and fleeing arrest would still count as violent felonies for purposes of his classification as a career offender.  The record shows that this court would have sentenced Miller to 188 months in any event, based on his serious criminal history, in consideration of the factors listed in 18 U.S.C. § 3553(a). Accordingly, the court find's Miller petition to vacate, set aside, or correct his sentence should be denied.

IT IS ORDERED:

1.       The defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Filing No. 67) is denied.

2.       This action is dismissed.

DATED this 5th day of May, 2010.

BY THE COURT:


s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.